UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.                                                                                      Cr. No. 15-55-01-JL

IRA GRAYSON

SENTENCING MEMORANDUM

Defendant Ira Grayson comes now, through defense counsel, filing this Sentencing Memorandum and moving the Court to depart downward and/or vary from the sentencing guidelines and sentence him to twenty-four (24) months in the Bureau of Prisons, to run concurrent to the balance of the sentence he is currently serving in Massachusetts, with three (3) years of supervised release to follow, and in support he shows as follows:

On May 29, 2015, the defendant Ira Grayson appeared before this Court for a change of plea hearing and pled guilty to Count 1 of the Indictment, charging him with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). The Court accepted the plea, and a presentence investigation was then ordered, with sentencing set for September 10, 2015.

Objection to Advisory Guideline Sentencing Range

The probation officer improperly calculated the defendant's advisory guideline range under U.S.S.G. § 2K2.1 by setting his base offense level at 22 "pursuant to USSG § 2K2.1(a)(3), because the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine *and the defendant committed the instant offense subsequent to sustaining a felony conviction for a crime of violence (Resisting Arrest)."* Presentence Investigation Report (PSR) para. 11 (emphasis added). The government has conceded, in a letter to the probation officer dated August 10, 2015 which is attached to the PSR, that under the Supreme Court's

1

ruling in *Johnson v. United States,* 135 S. Ct. 2551 (2015), the offense of resisting arrest should not qualify as a crime of violence and the base offense level should be 20, rather than 22, under U.S.S.G. § 2K2.1(a)(4).

The Guideline career offender crime-of-violence residual clause at U.S.S.G. §4B1.2(a), incorporated by reference in U.S.S.G. § 2K2.1(a)(3)'s crime of violence definition, uses the same language that *Johnson* held was impermissibly vague because it "produces more unpredictability and arbitrariness than the Due Process Clause tolerates." 135 S. Ct. at 2558. The First Circuit has consistently interpreted the residual clauses in §924(e)(2)(B)(ii) and U.S.S.G. §4B1.2(a)(2) similarly. *See, e.g., United States v. Jonas,* 689 F.3d 83,86 & n.l (1st Cir. 2012); s*ee also United States v. Wray*, 776 F.3d 1182, 1184-85 (10th Cir. 2015).

Under the advisory Guideline system, courts still must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range" and use the Guidelines as "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007); *see Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) ("That a district court may ultimately sentence a defendant outside the Guidelines range does not deprive the Guidelines of force as the framework for sentencing."). Application of a vague Guideline conflicts with the Guidelines' proper role in providing a uniform baseline for sentencing. The vagueness doctrine, which derives from the Fifth Amendment, applies to the sentencing guidelines, just as do the Sixth Amendment right to trial by jury, *see Booker v. United States*, 543 U.S. 220 (2005), and the Ex Post Facto clause, *see Peugh v. United States*, 133 S.Ct. 2072 (2013). In fact, the First Circuit applied the rule of lenity – "a sort of 'junior version of the vagueness doctrine,'" *United States v. Lanier*, 520 U.S. 259, 266 (1997) - to the guidelines in *United States v. Maldonado,* 614 F.3d 14 (1st Cir. 2010) and *United States v. Bowen*, 127 F.3d 9 (1st Cir. 1997).

If this objection is sustained, the base offense level would be 20 under U.S.S.G. §2K2.1(a)(4)(B), and the total offense after credit for acceptance of responsibility is applied would be 17, rendering an advisory guideline sentencing range of 51-63 months (CHC VI, TOL 17).

<u>Motion for Downward Departure and/or Variant Sentence</u>

The defendant respectfully requests that the Court depart downward and/or vary and sentence him below the advisory guideline scheme, to twenty-four (24) months in the Bureau of Prisons, to run concurrent with the balance of the sentence he is currently serving in Massachusetts, with three (3) years of supervised release to follow.

The defendant respectfully moves the Court to grant a downward departure in this case under U.S.S.G. §5K2.0. U.S.S.G. §5K2.0 (2) through (4) authorizes a downward departure based on circumstances of a kind not adequately taken into consideration in determining the guideline sentencing range, based on circumstances present to a degree not adequately taken into consideration in determining the range, and/or based on the exceptional presence of offender characteristics not ordinarily relevant.

In the alternative, the defendant moves the Court to sentence him outside (*i.e.* to vary below) the advisory guideline sentencing range to the requested sentence. *Booker v. United States*, 543 U.S. 220, 126 S. Ct. 738 (2005), authorizes this Court to impose a non-guideline sentence. Although the sentencing process must commence with a guideline calculation, the U.S. Sentencing Guidelines are merely advisory, and district courts are required to consider all of the factors listed in 18 U.S.C. §3553(a) in imposing sentence. *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007); *Booker*, 543 U.S. at 262; *United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008) ("A district court should begin its sentencing analysis with the advisory guidelines calculation,

then its 'next steps should include hearing argument from parties as to the proper sentence in a particular case, weighing the applicability of the sundry factors delineated in 18 U.S.C. §3553(a), reaching an ultimate sentencing determination, and explicating that decision on the record.'") (*citing Gall*, 128 S.Ct. at 596-97).

The paramount directive in 18 U.S.C. §3553(a) is that the Court must impose a sentence that is "sufficient, but not greater than necessary," to achieve the purposes which underlying the sentencing statute. 18 U.S.C. §3553(a). Section 3553(a) directs sentencing courts to consider a number of factors, *inter alia*:

>   (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   (2)   the need for the sentence imposed—
>
>       (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>       (B)   to afford adequate deterrence to criminal conduct;
>
>       (C)   to protect the public from further crimes of the defendant; and
>
>       (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner .
> . . .

*Id.*

The importance of, and rationale for, the post-*Booker* and -*Gall* sentencing procedure described above has been summarized by the First Circuit Court of Appeals as follows:

> This sequencing necessitates a case-by-case approach, the hallmark of which is flexibility. In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court "should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

4

*Martin*, 520 F.3d at 91 (*citing Gall*, 128 S.Ct. at 598).

      The defendant premises his motion for downward departure and/or variance on the nature and circumstances of the offense.

      In brief summation of the facts, on December 7, 2014, the defendant, a convicted felon, traveled from Massachusetts to the Manchester (NH) Firing Line Range and rented an IMI, model UZI, 9mm machine gun bearing serial number 5387579. He later posted short videos of himself firing two firearms on his Facebook page. Law enforcement became immediately aware of this, within a day or two, after seeing those same videos that the defendant posted. The defendant was indicted by a grand jury on April 8, 2015, brought to New Hampshire to face charges on April 17, 2015, and by May 29, 2015 had pled guilty in this Court after signing an Acknowledgment and Waiver of Rights form.

      The defendant only possessed the firearm in question for a brief period – he rented it in a controlled environment to fire it, as a form of entertainment. He did not use the firearm in furtherance of any crime, and no member of the public was ever in danger as a result of the defendant's conduct. There are no victims of this offense – there is no evidence to suggest that he threatened anyone with the firearm or used it in a way that deviated from the way any other member of the public would use it at the Manchester Firing Line Range. The Manchester Firing Line Range did not notify law enforcement – they only became aware of the defendant's unlawful actions when they were visited by law enforcement two days later. The defendant did not even apparently consider that his actions would result in criminal charges, as he openly posted the videos of himself firing the guns on his Facebook page.

      The defendant's motive for committing this offense was benign – he and a couple friends rented some firearms to fire in a controlled environment, as a form of entertainment, akin to

going to a carnival arcade. Various courts have granted variances in cases where a defendant's motive for committing an offense is benign. *See, e.g., United States v. McDougal*, 368 Fed. Appx. 648 (6th Cir. 2010) (court gave 36 month prison term rather than sentence in 51-63 month guideline to slightly less culpable cohort who helped rob bank/brandished gun, to pay his debts); *United States v. Craig*, 2011 U.S. Dist. LEXIS 139255 (E.D. Wis. Dec. 3, 2011) (18-month prison term rather than 70-87 month guideline for conspiring to distribute 5 kilos/more cocaine, in light of terrible early childhood and foster care, devotion to impoverished foster mother's needs, reentry into drug world to repay debt owed by his mother to dealers who threatened to kill his nephew to get it); *United States v. Barba-Herrera*, 2011 U.S. Dist. LEXIS 100415 (E.D. Wis. 2011) (court chose 18 month term for illegal reentry, over 46-57 month guideline, where defendant did not return to commit crime and worked steadily); *United States v. Andrade-Pizarro*, 576 F3d. Appx. 397 (5th Cir. 2014) (below guideline term of 32 months imposed in light of benign motive for defendant's illegal reentry and low risk of recidivating).

      The fact that the firearm the defendant rented was a machine gun (*i.e.* a firearm described in 26 U.S.C. §5845(a)) really drives this sentence. If not for that fact (and assuming that the resisting arrest on his criminal record is not a "crime of violence" within the definition of U.S.S.G. §§2K2.1 and 4B1.2, as the defendant has argued), the base offense level would be 14 pursuant to U.S.S.G. §2K2.1(a)(6)(A) and with acceptance of responsibility the guideline range would be 30-37 months (CHC VI, TOL 12). In the context of this case, it makes no sense to calculate the defendant's guideline range based primarily on his benign, temporary possession of a machine gun. The statutes on which the guideline is based, 26 U.S.C. §§ 5845(a) and 5861, require individuals who possess these firearms to register them with the National Firearms Registration and Transfer Record, but no one who goes to the Manchester Firing Line Range to

rent one of these firearms has to register them with the National Firearms Registration and Transfer Record. The harm that the law typically seeks to punish is absent here, as these firearms are available to rent on a time-based basis to anyone with the funds to rent them – rental does not require members of the public to comply with the referenced statutes.

The defendant is a 29-year-old man whose adult criminal record largely consists of firearm offenses. His most serious offenses – domestic assaults – were not adjudicated until just recently, after the commission of this offense, and he is currently serving a 2½ year state prison sentence for those offenses in Massachusetts. The defendant had a difficult upbringing – raised by a single mother, a disabled veteran with serious mental health issues (post-traumatic stress disorder, derived from her military service), he was mainly left to his own devices, without a great deal of parental direction. He suffers from Attention Deficit Disorder and depression, both of which have gone untreated. While he experimented with marijuana and alcohol in his teens and twenties, it does not appear as if he has any serious substance abuse issues, and he has never undergone treatment for same. He has trouble with his eyesight, due to an assault by an inmate that he suffered while incarcerated in Massachusetts.

The defendant's father lives in Alabama, and it was while spending summers with him that the defendant was first exposed to firearms. The defendant's fondest memories involve hunting and target-shooting in rural Alabama, with his father and with other members of his extended family. The defendant understands now that he is not permitted to possess firearms under any circumstances, even on a temporary or transitory basis, and will not seek to possess them in the future.

A two-year sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). There is no purpose to be served by incarcerating

this defendant, who rented a firearm for a very brief time, fired it in a controlled environment, and harmed no one, for four, five, or six years, as the guidelines appear to suggest. The defendant is currently serving the lengthiest period of incarceration he has ever served heretofore. He had already pledged to change his life when he learned he had been indicted on these charges. He immediately took responsibility for the offense by signing an Acknowledgment and Waiver of Rights form and pleading guilty to the offense.

No memorandum accompanies this motion because it contains supporting authority.

WHEREFORE, it is respectfully moved that the Court grant said relief and such other and further relief as may be just.

Respectfully submitted,

*/s/ Jeffrey S. Levin*
Jeffrey S. Levin (NHBA # 12901)
Assistant Federal Public Defender
22 Bridge Street-3rd Fl.
Concord, NH 03301
Tel. 603-226-7360
Jeff_Levin@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2015 the above document was served via CM/ECF to counsel of record and that copies will be e-mailed to SUSPO Sean Buckley and mailed to the defendant.

*/s/ Jeffrey Levin*
Jeffrey Levin